(No. 3127—

JAMES GALLAGHER, Claimant, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed March 25, 1938.*

Claimant, pro se.

OTTO KERNER, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. JUSTICE YANTIS delivered the opinion of the court:

Claimant James Gallagher of Brookville Township, Ogle County, Illinois, herein seeks an award of $2,770.00 as compensation for injuries sustained by him while employed by the State of Illinois. The record is meager and unsatisfactory, due doubtless to the fact that claimant has endeavored to handle a compensation claim pro se. The record consists of a sworn complaint, filed September 23, 1937; a Departmental Report by M. K. Lingle, Engineer of Claims; a signed statement by claimant, approving or disagreeing with the respective statements made in such report; a waiver of the right to submit further evidence, signed by claimant and filed January 6, 1938; Statement, Brief and Argument by respondent; reply by claimant; respondent's reply; and claimant's second or supplemental reply. A number of matters are

brought out and discussed in the Argument that do not appear in the evidence itself, and the only evidence that is properly before the court is that contained in the sworn statement of facts and the Departmental Report, signed by Mr. Lingle.

From this evidence it appears that claimant was employed by the State of Illinois on November 14, 1936 as a workman in the construction of State Highway No. 77. While so employed, his foot slipped beneath the wheel of a highway division truck while the latter was backing up to dump its load at the point where claimant was working. Claimant was removed to the Dixon Public Hospital and was attended by Dr. L. M. Griffin of Polo, Illinois, who stated in his report that claimant had suffered a fracture of four Metatersals, first and second Phalanx and the lower third of the Fibula. X-rays were taken and treatment rendered at the hospital from November 14th to November 20th. The cast that had been placed on his foot was removed by Dr. Griffin on December 1st, and he continued to treat claimant until January 5, 1937 when he dismissed the case with the statement, ''claimant unable to do manual labor; injury not at a permanent stage; a slight deformity to result from injury.'' On January 19th claimant was again examined at the Dixon State Hospital and was found to be unable to work and should be given further treatment. On March 3rd, 1937 he was taken to Chicago and examined and treated by Dr. H. B. Thomas, Chief of the Department of Orthopaedics of the University of Illinois. While there he was lodged and fed at the Y. M. C. A. Hotel at the expense of the Highway Division. Claimant traveled back and forth from his home to Chicago at various times, remaining in the latter city for further treatment, and was finally released by Dr. Thomas on May 10th, 1937, at which time the latter stated, ''that the patient's disability had been reduced seventy-five (75) per cent by Physiotherapy * * * present disability at that time fifteen (15) per cent.'' Compensation payments were stopped on May 15th, 1937 by the Highway Division, as it then considered the patient's case at a permanent stage.

Claimant had worked for the Highway Division from September 26th, 1936 until November 14th, 1936, during which time he received $128.50. Total compensation had been paid to him from the date of his injury, November 14, 1938, until May 15, 1937, in the amount of $10.00 per week, or a

total of $260.00. In addition thereto, hotel, hospital and medical bills have been paid for him in a total sum of $297.78, as shown by the Departmental Report. While the present claim is prosecuted pro se, it further appears that on two different occasions Robert L. Bracken of Dixon, Illinois requested, as attorney for .claimant, copies of Dr. Thomas' Report on Gallagher's condition; both of such requests were apparently complied with.

Claimant seeks an award of $1,847.00, under Section 8, paragraphs (d) and (h) of the Workmen's Compensation Act, averring that previous to his injury his weekly wage was $20.00, and that since said accident the only work he has been able to do was for a period of three (3) weeks at an average weekly wage of $11.22.

He seeks further damages in the amount of $923.00, under the provisions of Section 19, paragraph (k) of the Act, alleging, "That the State has been guilty of unnecessary delay in conducting his case and in closing the same before the injury was at a permanent stage, and without his knowledge, thereby depriving him from any income for the period of May 15, 1937 to August 14, 1937."

It does not appear that there has been any unreasonable or vexatious delay of payment or intentional under-payment of compensation, or any frivolous delay upon the part of respondent, which would justify a penalty, under the provisions of Section 19 (k) of the Act. Whatever dissatisfaction claimant may have experienced is apparently to be attributed to his lack of competent legal guidance.

It is evident from the record that except for claimant's temporary total disability, his rights under the Act are for a specific loss of use of the foot. Section 8 (d) of the Act grants specific payment of fifty (50) per cent of the difference between the average amount which an employee earned before the accident and the average amount which he is able to earn in some suitable employment thereafter. Such provision however contains the further limitation that such payment shall govern, "except in the cases covered by the specific schedule set forth in paragraph (e) of Section 8." Said latter section provides, "That an injured employee shall receive compensation for the period of temporary total incapacity in accordance with the provisions of paragraphs (a) and (b) of said Section 8 for a period not to exceed sixty-

four (64) weeks, and shall receive in addition thereto, compensation for a further period subject to limitations as to amount as in said Section 8 provided, for the specific loss, *but shall not receive any compensation for such injury under any other provision of the Compensation Act.''*

Said Section 8 (e) thereafter provides, under Sub-section 14 as follows:

"For the loss of a foot or the permanent and complete loss of its use fifty percentum of the average weekly wage during one hundred thirty-five (135) weeks."

Also, Sub-section 17 provides as follows:

"For the permanent partial loss of use of a member * * * fifty percentum of the average weekly wage during that proportion of the number of weeks in the foregoing schedule provided for the loss of such member * * * which the partial loss of use thereof bears to the total loss of use of such member."

At the time of the accident claimant was receiving pay at the rate of Fifty (50) Cents per hour on the basis of eight (8) hours per day. As his employment was not constant he comes within that minimum provision of the Act which provides for a basis of two hundred (200) days for compensation of wage average. Under such computation an annual wage estimate of $800.00 would result in average weekly wages of $15.38. Twenty-six (26) weeks of total temporary disability at fifty (50) per cent of such average weekly wage, or $7.69 would have entitled him to $199.94 temporary total disability. During the period of such temporary total disability he received in fact $260.00, or an over-payment of $60.06. The evidence as it now appears in the record supports a fifteen (15) per cent specific loss of use of one of claimant's feet. No place in the record can one ascertain which foot was injured. Under the provisions of the Compensation Act, and on the basis of the average weekly wage above stated, claimant would be entitled to $7.69 for 20.25 weeks for such specific loss, amounting to $155.72. From this should be deducted the sum of $60.06 heretofore over-paid on temporary total disability, leaving a net award due of $95.66. An award is hereby made in favor of claimant for said sum of $95.66, all of which has heretofore accrued.

This award being subject to the provisions of an Act entitled, ''An Act Making an Appropriation to Pay Compensation Claims of State Employees and Providing for the Method

of Payment Thereof," approved July 3, 1937 (Sess. Laws 1937, p. 83) and being, by the terms of such Act, subject to the approval of the Governor, is hereby, if and when such approval is given, made payable from said appropriation from the Road Fund in the manner provided for in such Act.